UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| INTRALOX, L.L.C. | * | CIVIL ACTION NO.: |
| *PLAINTIFF*, | * | |
| | * | |
| VERSUS | * | |
| | * | |
| SYSTEM SOLUTIONS OF | * | Jury Trial Demanded |
| KENTUCKY, LLC, AND LUMMUS | * | |
| CORPORATION | * | |
| *DEFENDANTS*. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Plaintiff, Intralox, L.L.C. ("Intralox"), files this Complaint against System Solutions of Kentucky, LLC ("SSK") and Lummus Corporation ("Lummus") (collectively the "Defendants"):

## PARTIES

1.     Plaintiff Intralox is a limited liability company organized under the laws of the State of Louisiana with its principal place of business in Harahan, Louisiana.  Intralox's sole member is Laitram, L.L.C.  Laitram, L.L.C. is a limited liability company organized under the laws of the State of Louisiana with its principal place of business in Harahan, Louisiana.  Laitram, L.L.C.'s sole member is Laitram Group, Inc.  Laitram Group, Inc. is a Louisiana corporation with its principal place of business in Louisiana.

2.      Defendant SSK is a limited liability company organized under the laws of the State of Kentucky with, on information and belief, its principal place of business in Kentucky, and its principal office is located at 10121 Bunsen Way, Louisville, Kentucky 40299.  On information and belief, no members of SSK are Louisiana citizens.  On information and belief, SSK is a wholly-owned subsidiary of Defendant Lummus following a transaction that was completed in November of 2016.  SSK may be served with service of process on Corporation Service Company at 421 West Main Street Frankfurt, Kentucky 4060.

3.      Defendant Lummus is a corporation organized under the laws of the State of Delaware with its principal place of business in Savannah, Georgia, and its principal office is located at 225 Bourne Boulevard, Savannah, Georgia 31408. Lummus may be served with service of process in this district through Corporation Service Company at 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

## VENUE AND JURISDICTION

4.      This Court has subject matter jurisdiction over the present dispute pursuant to 28 U.S.C. § 1332, because Plaintiff Intralox is diverse from each Defendant and the amount in controversy exceeds $75,000.

5.      SSK consented to personal jurisdiction in this forum in the Master Purchase of Goods Agreement for UPS Projects dated March 20, 2018 (the "Master

Purchase Agreement"), which is the contract governing the present dispute. Further, this Court has personal jurisdiction over Lummus, because Lummus has its principal place of business in Georgia and is therefore at home in the State of Georgia.

6.     Venue is proper under 28 U.S.C. § 1391(b), (c)(2), and (d). SSK agreed that venue would be proper in this Court in the Master Purchase Agreement. Furthermore, Lummus is a corporation subject to personal jurisdiction in this district because, upon information and belief, it has sufficient minimum contacts within this district and maintains its registered agent in this district.

## FACTUAL ALLEGATIONS

7.     The present dispute arises out of SSK's failure to pay Intralox for certain conveyor systems, which SSK contracted to purchase in May of 2018, and which Intralox did in fact deliver and install consistent with the terms of that agreement. SSK purchased the systems at issue for use at a facility in Philadelphia, Pennsylvania, operated by non-party United Parcel Service ("UPS"), and on information and belief was fully compensated by UPS for the purchased systems, with the exception of the final 10% payment on the Project, which on information and belief UPS has not paid, at least in part due to the failure of SSK to pay Intralox.

8.     Intralox produces and delivers conveyor systems and related services and equipment, in addition to modular plastic and positive drive thermoplastic conveyor belts.

9.     SSK designs, sources, and installs conveyor and sortation equipment for the parcel, baggage, and cargo industries.  While SSK does design its own systems, it also sources conveyor systems from third-party designers and suppliers like Intralox.

10.     In March of 2018, SSK and UPS contacted Intralox regarding equipment needs at a UPS facility in Philadelphia.  Shortly after these discussions began, Intralox provided SSK with an Equipment Proposal on March 12, 2018 (the "Equipment Proposal") outlining the specific equipment Intralox was proposing to design and supply and detailing the schedule of deliveries, the pricing of the equipment, and the terms and timing of the invoicing and payment for the job.

11.     Specifically, the Equipment Proposal provided that a Purchase Order was to be received no later than April 6, 2018, and shipment of the equipment was proposed to begin on July 26, 2018.  The total price quoted for the job was six million, nine hundred and eighty-nine thousand, seven hundred and thirty-two dollars ($6,989,732.00).  Thirty percent (30%) of the total purchase price was to be invoiced upon receipt of SSK's Purchase Order, sixty percent (60%) upon shipment of the equipment, and the remaining ten percent (10%) upon SSK's acceptance of the equipment.  The Equipment Proposal provided that each invoice was to net out — meaning, be paid in full — within forty-five (45) days of issuance.

12.    On March 20, 2018, SSK and Intralox entered the Master Purchase Agreement supplying the terms that would govern the purchase of equipment in accordance with the Equipment Proposal once the Purchase Order was issued. Importantly, the Master Purchase Agreement provided that "[p]ayment terms shall be as provided in the Intralox Proposal and or the PO [Purchase Order]"; SSK "shall pay all valid and undisputed invoices"; "[i]nterest will accrue on late payments at the applicable legal rate"; and "[p]urchaser is responsible for any collection costs in accordance with the maximum rate allowed in the applicable jurisdiction."  The Master Purchase Agreement was signed by Steven Bahlmann, then Chief Financial Officer for SSK, on March 20, 2018, and by Intralox on March 21, 2018.

13.    Consistent with the terms of the Master Purchase Agreement and the Equipment Proposal, on May 24, 2018, Frank Spell, a senior buyer at Lummus, provided Intralox with the Purchase Order, which confirmed the date of shipment, the equipment to be provided, the agreed purchase price ($6,989,732.00), and the schedule for invoicing and payment.  At this point, Intralox invoiced SSK for the two million ninety-six thousand nine hundred nineteen dollars and sixty cents ($2,096,919.60) that was then owed on the contract, due within 45 days.

14.    Unfortunately, SSK fell behind on its contractually obligated payments to Intralox almost immediately. The 45-day net date for the May 24 invoice — which invoiced the initial 30% owed under the Master Purchase Agreement — came and

went without payment from SSK.  Numerous other invoices for other projects that Intralox had with SSK also went unpaid.  By August 2018, SSK owed Intralox nearly $5.8 million in overdue payments. When Intralox contacted executives at SSK that same month to inquire about the status of the overdue payments, it was told that Michelle Hikes, then Chief Financial Officer at Lummus, would be handling the payment issue.

15.    It was not until August 21, 2018 that SSK finally paid the May 24 invoice in the amount of $2,096,919.60.  Even after this payment, however, numerous other invoices remained overdue and unpaid.  At this time, SSK still owed Intralox over $3.7 million in overdue payments.

16.    Throughout this time period, senior employees at Lummus regularly intervened on SSK's behalf and made representations to Intralox regarding the status of the delinquent payments.  For example, on September 4, 2018, Lummus / SSK CFO Michelle Hikes e-mailed Intralox regarding SSK's late payments.  In that e-mail, CFO Hikes first apologized "for the payment delay that Intralox is experiencing with SSK," and introduced herself as "the CFO from Lummus / SSK." CFO Hikes asked Intralox to "be assured that getting you guys current is at the top of our list."  CFO Hikes went on to explain that the payment delay had been caused by payment processing problems SSK had experienced with UPS, that "we"

expected to receive another payment from UPS on September 13, and at that time SSK would "bring the entire Intralox account up to date."

17.     Following this e-mail, SSK did indeed pay the outstanding $3.7 million in overdue invoices, making it reasonable for Intralox to believe Lummus / SSK CFO Hikes's representation that SSK's delays in payments were solely attributable to delays by UPS.  On the basis of this representation, Intralox continued to satisfy its contractual obligations under the Master Purchase Agreement by completing shipment of the contracted for systems.  These shipments were ultimately completed on September 24, 2018.  As agreed to in the Equipment Proposal and Purchase Order, that shipment included an invoice, dated September 14, 2018, for 60% of the purchase price, or four million one hundred ninety-three thousand eight hundred thirty-nine dollars and twenty cents ($4,193,839.20).  As agreed to by SSK, that invoice was to be paid in full within forty-five days, or October 29, 2018.

18.     Unfortunately, as with previous payment deadlines, October 29 passed without the required payment from SSK.  On Tuesday, November 13, 2018, Intralox e-mailed Lummus / SSK CFO Hikes to inquire about the status of the September 14 invoice, as well as other past-due invoices from other projects.  On November 14, 2018, Lummus / SSK CFO Hikes responded, again claiming that SSK's admitted delays in payment were due to its own difficulty in getting paid by UPS.

13375262v1

19.     In the interim, SSK accepted shipment of the agreed upon systems and, per the terms of their agreement, Intralox issued an invoice on December 18, 2018 for the remaining 10% of the purchase price, or six hundred ninety-eight thousand nine hundred seventy-three dollars and twenty cents ($698,973.20), thereby satisfying the last of their contractual obligations to SSK.  The December 18 invoice became past-due on February 2, 2019, yet again without payment from SSK.

20.     On January 7, 2019, Intralox again e-mailed Lummus / SSK CFO Hikes to ask about the status of the September 14 invoice, which at that point had become 60 days late.  Having received no response, on January 8, 2019, Intralox e-mailed both Lummus / SSK CFO Hikes and Ben Hinnen, Chief Executive Officer at Lummus, reminding both that Intralox's "terms with SSK are net 45 days" and that Intralox "expect[ed] payments as agreed upon with [the] contracts."  Intralox further requested that Lummus or SSK provide Intralox "with an update as to when [Intralox] can expect payment."

21.     In response to the above e-mails, Intralox received an automatic reply on January 16, 2019, indicating that CFO Hikes was no longer with Lummus, and directing further inquiries to Guy Phillips, a member of the Lummus board of directors.

22.     During the course of the project, Intralox filled certain change orders requested by SSK in order to address new equipment related needs that had arisen at

the job site.  For these change orders, Intralox issued SSK an invoice on January 22, 2019 for the agreed-upon price of one hundred forty-nine thousand four hundred five dollars and twenty-seven cents ($149,405.27).  The January 22 invoice became past-due on March 9, 2019, and to date has not been paid.

23.    Throughout the coming months, representatives from Intralox continued to communicate with Guy Phillips and Ben Hinnen regarding SSK's delinquent payments, who represented to Intralox that Lummus "was working to get things resolved as soon as possible."

24.    Regardless of Lummus's representations to the contrary, in the first quarter of 2019, Intralox learned that UPS had in fact been paying SSK the moneys owed, and SSK should have been in position to satisfy its debts to Intralox.  Despite this, to date SSK has not satisfied its contractual obligation to pay Intralox the amounts owed under the September 14, December 18, or January 22 invoices, totaling $5,042,217.67.

## COUNT I — ACTION ON OPEN ACCOUNT

25.    Intralox incorporates the allegations in paragraphs 1 to 24 as if those allegations were realleged in full here.

26.    Under the Master Purchase Agreement, the Equipment Proposal, and the Purchase Order, Intralox and SSK agreed that Intralox would provide certain

goods and services to SSK, who would pay an agreed price at an agreed invoicing schedule.

27.     Intralox provided the goods and services agreed to in those documents.

28.     SSK, however, failed to make the agreed payments under those invoices, totaling over $5 million.

29.     Under the Master Purchase Agreement, the parties agreed that "[i]nterest will accrue on late payments at the applicable legal rate" and SSK "is responsible for any collection costs in accordance with the maximum rate allowed in the applicable jurisdiction."

30.     Because Intralox has provided the agreed goods and services, and the price of such goods and services has been agreed upon, but SSK has failed to fully pay the agreed sum even after being fully paid by UPS, Intralox prays that SSK be ordered to pay $5,042,217.67 plus interest, costs, and attorneys' fees.

## COUNT II — BREACH OF CONTRACT

31.     Intralox incorporates the allegations in paragraphs 1 to 30 as if those allegations were realleged in full here.

32.     Under provision four of the Master Purchase Agreement, as well as the Equipment Proposal and the Purchase Order, the parties agreed that Intralox would invoice SSK for 60% of the total purchase price of the agreed to systems at the time of shipment, and 10% of the purchase price at the time SSK accepted the goods.

13375262v1

SSK also agreed under those documents to pay each invoice in full within 45 days of the invoice date.

33.    Despite Intralox providing all purchased systems agreed to in the contracts, and invoicing for the purchase price as scheduled in the relevant agreements, SSK has failed to timely pay those invoices, even after SSK itself has received full payment from UPS.  SSK has further failed to pay a third invoice, issued on January 22, 2019, for change orders agreed to in the contracted-for project.

34.    Intralox has been damaged by SSK's failure to pay because it has not received the price contracted to for the goods and services provided.  Intralox has the right to complain about the contract being broken, because it is a party to the contract and has fulfilled all of its obligations under the contract.

35.    Under the Master Purchase Agreement, the parties agreed that "[i]nterest will accrue on late payments at the applicable legal rate," and SSK "is responsible for any collection costs in accordance with the maximum rate allowed in the applicable jurisdiction."

36.    Because Intralox has provided the agreed goods and services, but SSK has failed to fully pay the agreed purchase price under the schedule provided in the Master Purchase Agreement, the Equipment Proposal, and the Purchase Order, Intralox prays that SSK be ordered to pay $5,042,217.67 plus interest, costs, and attorneys' fees.

13375262v1

## COUNT III — EXPRESS OR IMPLIED AGENCY

37.     Intralox incorporates the allegations in paragraphs 1 to 36 as if those allegations were realleged in full here.

38.     Throughout the duration of this transaction, the conduct of employees at Lummus and SSK has repeatedly indicated to Intralox that the two companies were working jointly on the UPS-Philadelphia transaction and SSK was the express or implied agent of Lummus for purposes of this transaction.

39.     For example, the initial Purchase Order was provided to Intralox not by an SSK employee but by Frank Spell, senior buyer at Lummus.  Further, once SSK's payments became delinquent, high-level Lummus employees intervened on SSK's behalf and represented that "we" would "get things resolved as soon as possible." These employees included Michelle Hikes, CFO of Lummus, Ben Hinnen, CEO of Lummus, and Guy Phillips, a member of the Lummus board of directors. These repeated interactions and representations gave Intralox the reasonable belief that SSK was entering into this transaction on Lummus's behalf, that Lummus controlled or had consented to SSK's actions in this transaction, and that Lummus would satisfy any contractually due payments that SSK had let become delinquent.  Intralox relied on this reasonable belief in continuing to satisfy its contractual obligations to SSK even after SSK had become delinquent in its payments.

13375262v1

40.     Because Lummus's actions created an express or implied agency relationship with SSK for the purposes of the UPS-Philadelphia transaction, Lummus bears liability for the actions of its agent SSK that fall within the scope of that agency.  Intralox therefore prays that this Court hold Lummus jointly and severally liable with SSK for the latter's breach of contract and liability under an open account.

## COUNT IV — ASSUMPTION OF LIABILITY

41.     Intralox incorporates the allegations in paragraphs 1 to 40 as if those allegations were realleged in full here.

42.     Although a parent company typically does not bear liability for the actions of a purchased subsidiary, that default rule is overcome whenever the parent expressly or impliedly assumes the liabilities of the subsidiary.

43.     Here, Lummus's conduct implies such an assumption of liability, regardless of whether Lummus expressly assumed any such liability in the documents memorializing its purchase of SSK.  For example, once SSK became delinquent on its payments to Intralox, high-level Lummus employees, including its CEO, CFO, and a member of its board of directors, represented to Intralox that "we" would "get things resolved as soon as possible."  These repeated representations by Lummus gave Intralox the reasonable belief that Lummus had assumed SSK's

13375262v1

liabilities, at least for the UPS-Philadelphia transaction.  Intralox relied on this reasonable belief in continuing to satisfy its contractual obligations to SSK.

44.   Because Lummus either expressly or impliedly assumed SSK's liabilities, Intralox prays that this Court hold Lummus jointly and severally liable with SSK for the latter's breach of contract and liability under an open account.

## COUNT V — UNJUST ENRICHMENT

45.   Intralox incorporates the allegations in paragraphs 1 to 44 as if those allegations were realleged in full here.

46.   Intralox provided a benefit to Lummus when it continued to ship the agreed-upon conveyor equipment to the SSK project even after SSK's initial payment delays.  Equity demands that Lummus compensate Intralox for this benefit, particularly given that Lummus induced Intralox's continued performance through its representations regarding the cause of SSK's payment delays.

47.   Because Lummus has been unjustly enriched by Intralox's performance on its contract with SSK, and equity demands that Lummus compensate Intralox for the benefit conferred, Intralox prays that Lummus be ordered to pay $5,042,217.67 plus interest, costs, and attorneys' fees.

## COUNT VI — PROMISSORY ESTOPPEL

48.   Intralox incorporates the allegations in paragraphs 1 to 47 as if those allegations were realleged in full here.

49.     On September 4, 2018, Michelle Hikes represented to Intralox via e-mail that, in her capacity as "the CFO from Lummus / SSK . . . getting [Intralox's invoices] current is at the top of our list."  CFO Hikes further represented that any delays in payments that Intralox had experienced were due to delays SSK was experiencing in getting paid by UPS.   Intralox reasonably relied on these representations when it decided to complete shipment of the agreed upon systems later in September 2018.  Lummus should have expected Intralox to so rely.  This reliance was to Intralox's detriment, because neither invoice sent after shipment was completed has been paid even after Lummus / SSK had been paid by UPS.

50.     Lummus should be estopped from revoking its promises to Intralox and should be ordered to pay $5,042,217.67 plus interest, costs, and attorneys' fees.

## COUNT VII — MERE CONTINUATION,
## DE FACTO MERGER, ALTER EGO, AND VEIL PIERCING

51.     Intralox incorporates the allegations in paragraphs 1 to 50 as if those allegations were realleged in full here.

52.     On information and belief, Lummus's purchase of SSK in November 2016 led to the former's complete domination of its recently-acquired subsidiary such that it is appropriate to disregard the liability shield that typically accompanies the corporate form.  Lummus's conduct in the present transaction indicates that Lummus directs and controls the corporate decision making of SSK, negotiates and approves contracts on its behalf, and takes responsibility for settling the subsidiary's

debts.  Further, Lummus's conduct indicates substantial overlap in the management of the two companies.  For example, in her communications with Intralox, Michelle Hikes indicated that she was the "CFO from Lummus / SSK."  Lummus's complete domination of its subsidiary indicates that any corporate separateness between the two is in form alone.  For these reasons, Lummus should be held liable for the actions of its subsidiary under the alter ego and veil piercing doctrines.

53.    Further, this same conduct indicates the likelihood of substantial identity of ownership and a complete identity of the objects, assets, shareholders, and directors of the two companies.  It is likewise reasonable to conclude from Lummus's conduct that SSK has functionally liquidated any business that is separate from Lummus's, and that Lummus has assumed the liabilities and obligations of its subsidiary necessary for the uninterrupted continuation of normal business operations of SSK.  For these reasons, Lummus should likewise be held liable under the mere continuation and *de facto* merger doctrines.

54.    Intralox prays that this Court hold Lummus jointly and severally liable with SSK for the latter's breach of contract and liability under an open account.

## PRAYER

**WHEREFORE** Intralox prays that SSK and Lummus be held jointly and severally liable to Intralox in the amount of $5,042,217.67 plus all interest that

has accrued at the applicable legal rate, costs, attorneys' fees, and all other remedies

this Court deems just.

Respectfully submitted,

ARNALL GOLDEN GREGORY LLP

/s/ Samuel M. Lyddan
Samuel M. Lyddan
Georgia Bar No. 544484
171 17th Street NW
Suite 2100
Atlanta, GA 30363
Telephone: 404-873-8700
Facsimile: 404-873-8701
Samuel.Lyddan@agg.com

BARRASO USDIN KUPPERMAN
FREEMAN AND SARVER, L.L.C.

Steven W. Usdin, (LA #12986)
(*pro hac vice* application forthcoming)
John W. Joyce, (LA #27525)
(*pro hac vice* application forthcoming)
Shaun P. McFall, (LA #37225)
(*pro hac vice* application forthcoming)
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone (504) 589-9700
Facsimile (504) 589-9701
susdin@barrassousdin.com
jjoyce@barrassousdin.com
smcfall@barrassousdin.com

*Attorneys for Intralox, L.L.C.*

13375262v1